**C & W ASSET ACQUISITION, LLC, as Assignee of Chrysler First Financial Services Corporation**

v.

**Donald H. OGGS.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Dec. 7, 2006 Session.

Jan. 30, 2007.

Permission to Appeal Denied by Supreme Court May 14, 2007.

James B.M. Hooper, Chattanooga, Tennessee, for the appellant, C & W Asset Acquisition, LLC, as assignee of Chrysler First Financial Services Corporation.

Donald H. Oggs, Sweetwater, Tennessee, pro se appellee.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., joined.

In this suit for breach of contract, the assignee of a loan agreement alleged that the defendant was in default of the agreement and requested judgment for monies advanced, plus interest and attorney's fees. The defendant denied owing the debt. The trial court found the plaintiff had failed to carry its burden of proof and dismissed the case. Upon our determination that the evidence does not preponderate against the finding of the trial court, judgment in favor of the defendant is affirmed.

## I. Background

Donald H. Oggs and Chrysler First Financial Services Corporation ("Chrysler") entered into a contract designated "Variable Rate Personaline Credit Agreement" ("the loan agreement"), pursuant to which Mr. Oggs was allowed a $5,000 line of credit and the right to advances of funds from Chrylser and in return, agreed to repay all advances made, along with specified finance charges. The agreement further provided that Mr. Oggs' failure to make any minimum payment when due would constitute a default of the agreement, authorizing Chrysler to demand payment of all monies due under the agreement along with accrued finance charges and reasonable attorney's fees. Later, this loan agreement was sold and assigned, first to NationsCredit Consumer Corporation, then to the Cadle Company, and finally, to the appellant, C & W Asset Acquisition, LLC ("C & W").

In October of 2004, C & W sued Mr. Oggs in the Circuit Court for Monroe County averring that Mr. Oggs had failed to repay funds advanced to him under the loan agreement and that as of September 21, 2004, he was indebted to C & W in the amount of $2,981.09. The complaint sought judgment against Mr. Oggs in that amount, plus prejudgment interest and attorney's fees.

On November 1, 2004, Mr. Oggs, representing himself, filed an answer to C & W's complaint, denying that he owed the debt and stating that he had "no knowledge of the same."

Thereafter, C & W filed a request for admissions that called upon Mr. Oggs to admit certain factual matters. When Mr. Oggs did not file a response within thirty days of the date of service, C & W filed a motion for an order deeming the matters admitted pursuant to Tenn. R. Civ. P. 36. The trial court denied this motion and permitted Mr. Oggs to respond in court to the request for admissions.

After hearing proof in the case on April 7, 2006, the trial court entered an order in favor of Mr. Oggs. C & W filed a timely notice of appeal and a Tenn. R.App. P. 24(c)[1] statement of the evidence. The statement of the evidence was served on Mr. Oggs, but he did not file any objections. The statement of the evidence was not approved by the trial court, but was deemed approved pursuant to Tenn R.App. P. 24(f)[2].

---

1. Tenn. R.App. P. 24(c) provides in pertinent part that "[i]f no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."

2. Tenn. R.App. P. 24(f)provides in pertinent part that "[t]he trial judge shall approve the

... statement of the evidence ... as soon as practicable after the filing thereof or after the expiration of the 15–day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. Otherwise the ... statement of the evidence ... shall be deemed to have been approved and shall be so considered by the appellate court...."

## II. Issues

In this appeal, we review the following issues:

1) Does the evidence preponderate against the trial court's decision that C & W failed to carry its burden of proof?

2) Did the trial court err in not deeming admitted the averments in C & W's complaint because they were not denied by Mr. Oggs in his answer?

3) Did the trial court err in not granting C & W's motion to have its request for admissions deemed admitted because of Mr. Oggs' failure to timely respond to such request?

4) Did the trial court err in not declaring that Mr. Oggs waived the affirmative defense of failure of consideration by not pleading it?

## III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

## IV. Analysis

### A. Preponderance of Evidence

The first issue we address is whether the evidence preponderates against the trial court's decision that C & W failed to carry its burden of proof. The proof adduced at trial consisted only of the testimony of a C & W case manager, exhibits to her testimony, and the testimony of Mr. Oggs. The brief statement of evidence filed by C & W provided in pertinent part as follows:

On April 7, 2006, a non-jury trial was conducted before the Honorable John B. Hagler. After making preliminary statements, plaintiff called Ms. Kristi Knisley to the witness box. After first being sworn in Ms. Knisley testified that she was the account manager for C & W Asset Acquisitions, LLC who was the assignee and holder of a personal line of credit agreement between Mr. Oggs and Chrysler First Financial Services Corporation.

. . .

Ms. Knisley testified that the books and fee account records showed that defendant Donald Oggs had executed a personal line of credit agreement with a $5,000.00 credit line limit. The executed credit agreement was entered into evidence as Exhibit 1. On September 26, 1988, an initial $2,500.00 draw was made upon the line of credit. Subsequently, Mr. Oggs made several additional draws upon the line of credit along with making a series of minimum payments. The line of credit balance history which indicated the draws and payment history was admitted into evidence as Exhibit 3. Ms. Knisley testified that on or about February 6, 1999 that Donald Oggs had made a $180.00 payment on the account. Again on May 1, 1999, the Cadle Company had received a $270.00 payment from Mr. Oggs. Copies of said checks were admitted into evidence as Exhibit 2. Ms. Knisley noted that both of Mr. Oggs' personal checks referred to the Nations Credit account number. No further payments were made by Mr. Oggs, despite repeated requests for payment by plaintiff.

Ms. Knisley testified that Mr. Oggs was in default of his agreement by failing to pay monthly payments as of April 7,

2005, Mr. Oggs owed a principal balance of $1,756.33 with accrued interest of $1,545.96 for a total of $3,302.27. This amount gives credit for Mr. Oggs' payments and takes into account the variable finance charge which fluctuates in relation to the 6–month certificate of deposit rate as published in the Federal Reserve Bulletin. Ms. Knisley also pointed out that the agreement which Mr. Oggs signed provided for the recovery of reasonable attorney fees after default.

The defendant chose not to ask questions of Ms. Knisley, and proceeded to testify on his own behalf. After first being duly sworn Mr. Oggs stated that he and his then wife had resided for a number of years in South Carolina until they divorced and he moved back to East Tennessee where he was from. Mr. Oggs testified that he had no recollection of this debt or receiving money from the line of credit, and thereby denied owing the plaintiff.

On cross examination and questioning of the Judge, Mr. Oggs admitted that it was his signature on the line of credit agreement (Exhibit 1) and that it appeared to be his signature on the two checks (Exhibit 2). He did not know who would have used his line of credit. At the conclusion of the testimony Judge Hagler stated that in his opinion that he felt that the plaintiff had failed to carry its burden of proof. Specifically that court felt that there was no proof before the court that Mr. Oggs had received the money from the line of credit. According, the Court ordered that this case was to be dismissed for this reason.

In deciding this case, the trial judge was faced with conflicting testimony. C & W's account manager, who had no personal knowledge of the draws Mr. Oggs allegedly received and the payments he allegedly made on the account, testified as to the balance due based on a computer printout. The computer printout listed a series of twenty-five checks allegedly advanced to Mr. Oggs and a series of payments he allegedly made over a ten-year period beginning in 1988. C & W's account manager testified to a balance of $3,302.27, as of April 7, 2005, but the computer printout alleged to be an accurate record of Mr. Oggs' account is dated November 20, 2003, and shows a balance of $2,174.84. Although the printout which is the basis of the account manager's testimony does not show any customer activity after November 10, 1998, C & W introduced two checks written by Mr. Oggs as payments on the account dated February 6, 1999, and May 1, 1999, which are not shown on the printout. Furthermore, C & W failed to introduce any checks it maintains were issued to Mr. Oggs as draws under the agreement, even though Mr. Oggs had denied the debt and did not recollect receiving money from the line of credit.

The testimony of C & W's account manager was countered by Mr. Oggs' testimony which, as set forth in C & W's own statement of the evidence, was that "he had no recollection of this debt or of receiving money from the line of credit and *thereby denied owing the plaintiff.*" (Emphasis added). The gist of this statement as we construe it is not that Mr. Oggs denied the debt *because* he did not recall it, but rather that he denied the debt *and* did not recall it. This construction is consistent with Mr. Oggs answer wherein he denied owing the debt and had no knowledge of it. It is important to note that the "debt" in this case is not a single advance but a series of twenty-five advances in the form of checks over a ten-year period. We bear in mind that the question before the trial court was whether Mr. Oggs currently owed the specific amount of $3,302.27, as claimed by C & W. The specific debt

claimed by C & W was not established by the mere fact that Mr. Oggs had in the past received money and made payments pursuant to the loan agreement. The payments made by Mr. Oggs were an acknowledgment of debt only to the extent of those payments and are not properly construed to also be an acknowledgment of the specific debt claimed by C & W. In other words, it does not follow from the fact that Mr. Oggs repaid debt that he did not deny, that he also owes separate and additional debt that he does deny. Mr. Oggs did not deny that he had in the past transacted business pursuant to the loan agreement, but only that he did not owe the debt currently asserted by C & W. We do not agree that the trial court erred in finding that C & W failed to carry its burden of proof by introducing witness testimony which was based upon a deficient and incomplete record and pertained to transactions of which its witness had no personal knowledge.

The trial judge's decision necessarily involved making a credibility assessment of these two witnesses. It was a classic "she said-he said" situation with which trial courts are often faced. The trial judge believed Mr. Oggs' testimony to be more credible than the testimony of the account manager.

██ It is well-settled that a trial court's assessment of witness credibility is entitled to great weight on appeal because the trial court saw and heard the witness testify. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 327 S.W.2d 47, 49 (1959). As we have further noted, "[t]he trier of fact is free to believe or disbelieve all or part or none of a witnesses' testimony, even where the testimony is uncontradicted or is not directly impeached." *Cornell v. State*, 118 S.W.3d 374, 378 (Tenn.Ct. App.2003), (citing *Blackmon v. Estate of Wilson*, 709 S.W.2d 596, 603 (Tenn.Ct.App. 1986)). The weight, faith and credit to be

given to a witness' testimony lies with the trial judge in a non-jury case because the trial judge had an opportunity to observe the manner and demeanor of the witness. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn.Ct.App.1991); *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn.Ct.App.1987). We give great weight to a trial court's determinations of credibility. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn.Ct.App.2000).

██ The trial court was in the best position to evaluate the evidence, judge the credibility of the witnesses, and determine the contested factual issue of whether funds were advanced to Mr. Oggs. This is because the trial court is "able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility." *Harley v. Harrison*, No. M2005–02099–COA–R3–CV, 2006 WL 2644372, at *3 (Tenn.Ct.App. Sept. 13, 2006) (citing *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn.1990)) (other citations omitted). Accordingly, we do "not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Harley*, 2006 WL 2644372, at *3 (citing *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 316 (Tenn.1987)) (other citations omitted). In this case, we will not second-guess the trial court's decision regarding witness credibility, as there is not clear and convincing evidence to the contrary.

██ As the plaintiff, C & W had the burden of proof. The essential elements of a breach of contract claim, as we noted in *ARC LifeMed, Inc., v. AMC–Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn.Ct.App.2005) (citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assoc.'s Ltd. Partnership, LPIMC Inc.*, 79 F.3d 496, 514 (6th Cir. 1996)), "include (1) the existence of an

enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." In order to prove nonperformance amounting to a breach of contract, C & W was required to prove that Mr. Oggs received the money that C & W claims was due and owing. The necessary implication of the trial court's finding that Mr. Oggs did not receive the money is that Mr. Oggs had no obligation under the loan agreement to repay the monies claimed, and his failure to do so did not amount to a breach of contract. Our review of the record does not persuade us that the evidence preponderates against this finding.

### B. Failure to Respond to Request for Admissions

■ Next, C & W argues that the trial court erred in failing to deem as admitted those matters set forth in C & W's request for admissions because of Mr. Oggs' failure to respond to such request. Before the trial, C & W filed a request for admissions that called upon Mr. Oggs to admit the following:

> Please admit that you executed the variable rate PersonaLine Credit Agreement and Disclosure Statements, a copy of which is attached hereto as Exhibit A.
> Please admit that the Plaintiff is entitled to enforce the terms of said credit agreement.
> Please admit that I have obtained money by drawing upon said credit agreement.
> Please admit that I formerly resided in Columbia, South Carolina.
> Please admit that on May 30, 1998, I notified Plaintiff's predecessor, Nations Credit, that I had moved to Sweetwater, Tennessee.
> Please admit that balance history attached as Exhibit B reflects the charges and payments made to my credit agreement.

When Mr. Oggs did not file a response within thirty days of the date of service, C & W filed a motion for an order deeming that matter admitted pursuant to Tenn. R. Civ. P. 36. The trial court denied this motion and instead allowed Mr. Oggs to respond in court to the request for admissions.

In support of its argument that the trial court erred, C & W cites Tenn. R. Civ. P. 36.01, which provides that a matter included in a request for admissions "is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. . . ." C & W appears to suggest that the matters in its request for admissions, if deemed admitted, establish its action for breach of contract. However, we find nothing in those matters set forth in C & W's request for admissions which, if held to be admitted by Mr. Oggs, constitute proof that he owes the $2,981 debt asserted by C & W.

For purposes of analysis, we will take it that Mr. Oggs admitted that he executed the loan agreement, that C & W is entitled to enforce the agreement, that Mr. Oggs obtained money under the agreement, that Mr. Oggs formerly resided in South Carolina, that Mr. Oggs notified C & W's predecessor that he had moved to Sweetwater, Tennessee, and that the "balance history attached as Exhibit B reflects the charges and payments made to [Mr. Oggs'] credit agreement." None of these statements constitutes evidence Mr. Oggs breached the loan agreement and owes C & W the debt claimed. The fact that Mr. Oggs executed an enforceable loan agreement with C & W and that he has in the past, obtained funds under the agreement

did not prove that any debt incurred by him under the agreement remained unpaid. Obviously, Mr. Oggs' place of residency is irrelevant to the question of whether he owes C & W money under the agreement. And finally, the admission that the charges and payments were made to Mr. Oggs' account, as set forth in the account balance history, does not constitute an admission by Mr. Oggs that such charges and payments are an accurate record of advances he actually received or of payments he made. The statement of evidence states that at the hearing on C & W's motion for an order deeming admitted the matters not responded to in the request, the court permitted C & W "to respond in court to the request for admissions." It is unclear whether Mr. Oggs' response was made during the motion hearing in January of 2006 or at trial on April 7, 2006. If Mr. Oggs' responses were made at the hearing in January, we believe C & W had sufficient time before trial to pursue further discovery if it so desired and was not prejudiced by the fact that Mr. Oggs did not respond within the time allotted under Rule 36.01. In any event, we need not determine whether the trial court erred in allowing Mr. Oggs to respond as it did because the probative value of the matters deemed admitted was inconsequential; therefore, any error committed by the trial court in this regard was harmless.

### C. Failure to Plead Affirmative Defense

Next, C & W contends that Mr. Oggs waived the issue of failure to receive consideration from the line of credit because he did not raise that issue prior to trial. C & W notes that failure of consideration is an affirmative defense that must be pled with specificity as required by Tenn. R. Civ. P. 8.03. That rule provides in pertinent part as follows:

In a pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute ... *failure of consideration* ... and any other matter constituting an avoidance or affirmative defense.

(Emphasis added).

C & W maintains that Mr. Oggs' answer that he had no knowledge of the debt claimed and did not owe it was insufficient to satisfy the requirements of Rule 8.03 with respect to the affirmative defense of failure of consideration and as a result, that defense was waived and should not have been the basis of judgment in his favor. We disagree.

We note that Mr. Oggs appears before us as a pro se litigant and has been without the assistance of counsel throughout this case and therefore, we are compelled to apply a somewhat different standard in reviewing his pleadings than we would had he been represented by an attorney. Mr. Oggs, as a pro se litigant, is entitled to fair and equal treatment by the courts. We do not excuse Mr. Oggs, as a pro se litigant, from complying with the same substantive and procedural rules that represented parties are expected to observe. But we give pro se litigants, such as Mr. Oggs who is untrained in the law, a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. We seek to give effect to the substance, rather than the form or terminology, of a pro se litigant's papers. *Young v. Barrow,* 130 S.W.3d 59, 62–63 (Tenn.Ct.App.2004).

Tenn. R. Civ. P. 15.02 allows an issue not raised by the pleadings to be tried by implied consent, providing in pertinent part as follows:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

■ The statement of evidence shows that Ms. Knisley testified that Mr. Oggs received payments (consideration) under the loan agreement and neglected to repay same. Given Mr. Oggs' denial of any knowledge of the debt claimed, we believe C & W should have reasonably known that the issue of failure of consideration was before the court as a matter of necessity, and we find no prejudice to C & W as a result of Mr. Oggs' failure to comply with Rule 8.03. In any event, C & W raised no objection to the trial court's decision upon the ground that it was based upon an affirmative defense not raised in accordance with Rule 8.03, nor did C & W otherwise object to Mr. Oggs' failure to comply with that Rule, and it is well-settled that an issue not raised in the trial court will not be entertained on appeal. *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn.2001). Accordingly, C & W's argument as to this issue has been waived.

### D. Deficiency of Answer

■ The final issue presented in this case is whether the averments set forth by C & W in its complaint should be deemed admitted because not denied by Mr. Oggs in his answer. In this regard, C & W contends that Mr. Oggs' assertions in his answer that he did not owe the debt and had no knowledge of it are inadequate to deny the complaint's averments that Mr. Oggs was in default of the loan agreement and was indebted to C & W in the amount claimed.

As has been noted by the Supreme Court of this state, "[a] partial failure to answer fully, as by omitting answer to particular allegation, should be timely called to the attention of the Trial Court with request that the alleged fact be considered as admitted. Failure to answer should not be considered a substitute for evidence when first invoked on appeal." *Smith v. Smith*, 643 S.W.2d 320, 323 (Tenn.1982), citing *Edwards v. Edwards*, 501 S.W.2d 283 (Tenn.Ct.App.1973). There is no indication in the record before us that C & W ever requested that any matters averred in its complaint be admitted because not adequately addressed in the answer filed by Mr. Oggs. Therefore, we deem this issue waived and decline to consider the averments specified as evidence against Mr. Oggs.

### V. Conclusion

For the reasons stated herein, we affirm the judgment of the trial court. Costs of appeal are adjudged against the appellant, C & W Asset Acquisition, LLC.

D. MICHAEL SWINEY, J., filed a dissenting opinion.

D. MICHAEL SWINEY, J., dissenting.

I respectfully dissent from the majority's opinion. I would reverse the Trial Court and remand this matter for entry of judgment as requested and as proven by the plaintiff.

Initially, I cannot agree with the majority's resolution of the issues concerning Mr. Oggs' failure to respond to requests for admission and his failure to plead the affirmative defense of failure of consideration. I believe the Trial Court's resolution of these issues, as affirmed by the majority, resulted in Mr. Oggs having an unfair

advantage simply because of his status as a *pro se* litigant. I believe such a result is contrary to the law of this state.

As recently stated by this Court in a case involving a *pro se* litigant's untimely appeal of a final judgment:

> While we realize the "legal naivete" of a *pro se* litigant such as Frazier, we must not allow him an unfair advantage because he represents himself. *Irvin v. City of Clarksville,* 767 S.W.2d 649, 651–52 (Tenn.Ct.App.1989). *Pro se* litigants who invoke the complex and technical procedures of the courts assume a very heavy burden. *Id.* at 652, (citing *Gray v. Stillman White Co.,* 522 A.2d 737, 741 (R.I.1987)). While they are entitled to fair and equal treatment, they must follow the same procedures as a represented part. *Id.* (citations omitted).

We find it appropriate to include the following observation of the Eastern Section of this Court, when faced with this same situation in *Grigsby v. Univ. of Tenn. Med. Ctr.,* No. E2005–01099–COA–R3–CV, 2006 WL 408053, at *2–3 (Tenn.Ct.App. Feb. 22, 2006). The Court was forced to dismiss the appeal of a *pro se* litigant because his notice of appeal was not timely filed, and stated:

> We do not favor dismissing *pro se* litigants' appeals on what might appear to be technicalities. However, while parties who choose to represent themselves are entitled to fair and equal treatment, they are not entitled to shift the burden of litigating their case to the courts, see *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1194 (D.C.Cir.1983), or to be excused from complying with the same substantive and procedural requirements that other represented parties must adhere to. *See Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn.Ct.App. 1988). Accordingly, they must act within the time periods provided by the applicable statutes and rules in order to have their cases considered. *See Williams–Guice v. Board of Educ.,* 45 F.3d 161, 164 (7th Cir.1995); *Kelley v. Secretary, United States Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987).

*Id.* (citing *Goad v. Pasipanodya,* No. 01A01–9509–CV–00426, 1997 WL 749462, at *2 (Tenn.Ct.App. Dec. 5, 1997)). Unfortunately Mr. Frazier's appeal was not timely filed, and therefore we may not consider the issues he has presented for our review.

*Frazier v. Campbell,* No. W2006–00031–COA–R3–CV, 2006 WL 2506706, at *3 (Tenn.Ct.App.W.S., August 31, 2006), *no appl. perm. appeal filed.*

First, as to Mr. Oggs' failure to respond to plaintiff's properly submitted requests for admission, I would hold the Trial Court erred by allowing Mr. Oggs never to respond to the requests for admission. The Trial Court did state that it would allow Mr. Oggs to respond in court, although it is unclear whether or not this oral response was to be at some hearing before trial or at trial. In either event, I believe it was error by the Trial Court to proceed this way as the Trial Court, in effect, simply removed Rule 36 from the Tennessee Rules of Civil Procedure and allowed Mr. Oggs, solely because he was a *pro se* litigant, not to have to respond to these properly submitted requests for admission. If Mr. Oggs was allowed to "respond" orally at some pre-trial hearing where there was no transcript or written record made, such a "response" was no response at all. If the Trial Court allowed Mr. Oggs to "respond" to the requests for admission by answering questions put to him on cross-examination at trial, that likewise is no "response" to the requests for admission but instead is nothing more than just that, answering questions on cross-exami-

nation at trial. In either event, I believe the Trial Court erred by giving Mr. Oggs an unfair advantage because he is a *pro se* litigant by holding that Rule 36 of the Tennessee Rules of Civil Procedure did not apply to him. There simply was no reason for Mr. Oggs, solely because of his status as a *pro se* litigant, "to be excused from complying with the same substantive and procedural requirements that other represented parties must adhere to." *Frazier*, 2006 WL 2506706, at \*3.

Likewise, I do not agree with the majority's conclusion that Mr. Oggs' failure to respond to the requests for admission and the Trial Court's failure to require him to comply with Rule 36 was inconsequential and therefore harmless. Frankly, I believe if Mr. Oggs had admitted even just the last request for admission: "Please admit that balance history attached as Exhibit B reflects the charges and payments made to my credit agreement", it most definitely would have been an admission by Mr. Oggs that such charges and payments were those advances made and payments received under that credit agreement as that is, despite the majority's reinterpretation of the language of the request, exactly what it says.

The Trial Court's error, and now affirmed by the majority, with regards to Mr. Oggs' total failure to respond to the requests for admission is then compounded by how the majority disposes of plaintiff's argument concerning Mr. Oggs' failure to plead the affirmative defense of failure of consideration. Once again, the majority excuses Mr. Oggs from complying with the Rules of Civil Procedure simply because of his status as a *pro se* litigant. To take Mr. Oggs' statement in his answer that he had no knowledge of the debt claimed and did not owe it, and to some way transform that into language sufficient to satisfy Rule 8.03 of the Tennessee Rules of Civil Procedure requiring the affirmative defense of failure

of consideration to be plead is a leap too great for any court to make. Rule 8.03 says that Mr. Oggs "shall set forth affirmatively facts in short and plain terms relied upon to constitute ... failure of consideration...." Clearly, Mr. Oggs plead no such facts. Mr. Oggs never once said in his answer, or even at trial for that matter, that he never received the money. The most he ever said, even at trial, was that he had no recollection of the debt or receiving the money, and in his answer the most he claimed was that he had no knowledge of the debt and did not owe it.

Putting aside for now Mr. Oggs' trial testimony and looking solely at his answer, I am completely at a loss as to what the plaintiff was supposed to have done. Applying the majority's reasoning, Mr. Oggs, solely because he is a *pro se* litigant, could in his answer say only that he does not know about or owe the debt and then be allowed to show up at trial, after first having been excused from responding to requests for admission, and raise any of the affirmative defenses set forth in Rule 8.03. Perhaps what Mr. Oggs meant when he said he did not owe the debt was that he had paid it; perhaps that there was duress; perhaps that estoppel or fraud applied; perhaps that a statute of limitations or statute of repose applied; perhaps that some other statute such as truth in lending applied. Under the majority's decision, plaintiff was required to come to court ready to address whatever possible or potential non-plead affirmative defenses Mr. Oggs as the *pro se* defendant might for the first time raise during the trial. Such a result totally emasculates Rule 8.03 of the Tennessee Rules of Civil Procedure.

I do not mean to say that a *pro se* litigant such as Mr. Oggs must use the magic phrase, "failure of consideration", or risk failing to comply with Rule 8.03. However, it is not unreasonable to avoid

giving a *pro se* litigant an unfair advantage to require that litigant to do exactly what Rule 8.03 says and that is to set forth affirmatively the facts relied upon to constitute whatever the affirmative defense may be. Here for example, if it was Mr. Oggs' position as the majority has found that he never received the money sued for, all he had to plead was "I never got the money." Instead, the Trial Court's ruling as now affirmed by the majority left this plaintiff, as it will every other similar plaintiff, guessing which of the long list of affirmative defenses contained in Rule 8.03 may be raised for the first time at trial, or apparently even later on appeal, by the *pro se* defendant as a defense. To hold, as the majority does, that the plaintiff should have been ready to address anything raised for the first time at trial by Mr. Oggs does exactly what is prohibited and that is to put Mr. Oggs, solely because of his status as a *pro se* litigant, in better shape that he would have been had he been represented by an attorney.

The majority's holding allows *pro se* litigants, solely because they are *pro se* litigants, to be excused from answering requests for admission and to be excused from complying with the Rules of Civil Procedure requiring the pleading of the facts of any affirmative defense. Further, the majority's holding then puts the party opposing the *pro se* litigant in the position of having to guess what the *pro se* litigant's position may be at trial. The majority then says that the litigant represented by counsel, because of Tenn. R. Civ. P. 15.02, is stuck because some issues and defenses that were not raised by the *pro se* litigant in his pleadings were then tried by implied consent.

The record before us shows that the plaintiff here never gave its implied consent to try these issues and in fact filed a motion concerning Mr. Oggs' failure to respond to the requests for admission.

Mr. Oggs should have been required to comply with the Rules of Civil Procedure by responding in writing before trial to the properly submitted Rule 36 requests for admission or they should have been deemed admitted as provided by Rule 36 itself. Mr. Oggs should have been required to comply with Rule 8.03 by pleading facts sufficient to put the plaintiff on notice that it was Mr. Oggs' defense that he never received the money. As this is not what happened, Mr. Oggs was given an unfair advantage solely because of his *pro se* status. The Trial Court erred in excusing Mr. Oggs from "complying with the same substantive and procedural requirements that other represented parties must adhere to." *Frazier*, 2006 WL 2506706, at *3.

Having expressed my inability to concur with the majority's decisions as to the issues concerning Mr. Oggs' failure to plead failure of consideration and his failure to respond to the requests for admission and the Trial Court's error in excusing him from complying with these Rules, I now turn to the majority's decision concerning plaintiff's remaining issue of whether or not the evidence preponderates against the Trial Court's decision that plaintiff failed to meet its burden of proof. I believe a review of that issue can not be made without first addressing, as discussed above, the Trial Court's errors in regard to the requests for admission and Mr. Oggs' failure to plead failure of consideration.

I take no issue with the Statement of Evidence as quoted in the majority's opinion. I think the evidence shown in that Statement of the Evidence, which, along with the trial exhibits, is all this Court has before it as to the evidence presented at trial, clearly shows the evidence preponderates against the Trial Court's decision that Plaintiff failed to carry its burden.

The majority couches it in terms of the Trial Court being faced with "conflicting testimony." Frankly, I believe there was no conflict between plaintiff's account manager's and Mr. Oggs' testimony. The reason for this is reflected in the Statement of the Evidence itself. Mr. Oggs never testified that he did not receive the money. Instead, all Mr. Oggs testified to, as set forth in the Statement of the Evidence, is "that he had no *recollection* of this debt or receiving money from the line of credit, and thereby denied owing the plaintiff." [emphasis added.] In other words, all Mr. Oggs testified to was that he remembered neither the debt nor getting any money. Mr. Oggs never testified he did not get the money. Saying that he did not recollect receiving money from the line of credit is not the same as saying he did not receive money from the line of credit.

This failure of Mr. Oggs to testify that he never got the money but rather only that he did not recollect either the debt itself *or getting money from the line of credit* is more that out-weighed by Mr. Oggs' concession at trial when he "admitted that it was his signature on the line of credit agreement (Exhibit 1) and that it appeared to be his signature on the two checks [making payments on the account for which plaintiff was suing] (Exhibit 2)." As stated in the Statement of Evidence, Mr. Oggs' two personal checks made as payments on the account sued on specifically refer to the "Nations Credit [plaintiff's undisputed predecessor] account number." Clearly it is undisputed from the Statement of Evidence before us that Mr. Oggs made at least two payments by check on the specific account sued upon by plaintiff, despite his statement that he "had no recollection of this debt or receiving money from the line of credit...." From the record before us, it is undisputed that Mr. Oggs received money from the line of credit as he made at least two payments by check on that specific line of

credit. This is so despite Mr. Oggs' inability to recollect the debt or recollect receiving money. The fact that he does not remember the debt or remember receiving money from the line of credit simply does not contradict his concessions at trial, that the signatures were his, and the documentary evidence showing that he did receive money from this specific line of credit as he wrote at least two checks making payments on this line of credit.

The majority's attempt to couch this as a battle of credibility is misplaced. If Mr. Oggs had testified that he never received any money from this line of credit or that he never entered into this debt or that he *had paid off the line of credit*, then it would have been a credibility question. That is not what happened. The majority makes the statement that "Mr. Oggs did not deny that he had in the past transacted business pursuant to the loan agreement, but only that he did not owe the debt currently asserted by C & W." Respectfully, that is *not what Mr. Oggs said or* denied. What Mr. Oggs testified to, as shown in the Statement of Evidence, is that "he had no recollection of this debt or receiving money from the line of credit...." I see no way short of magic to transform Mr. Oggs' testimony that he had "no recollection of this debt or receiving money from the line of credit ..." into testimony that he admitted in the past having transacted business pursuant to the loan agreement, including receiving money from the line of credit, but that he had not received the money currently sued for by plaintiff. That simply is not what he said. He testified only to "no recollection of this debt or receiving money from the line of credit...." Clearly and without doubt as shown by his concessions at trial and his two checks making payments on the very account sued on by plaintiff, Mr. Oggs definitely did receive money from this line of credit even though he has no "recollection" of having done so.

I disagree with the majority as I do not believe any credibility assessment was required of the two witnesses. Mr. Oggs' testimony never was contrary to the evidence presented by plaintiff, but rather only was that he had no recollection of the debt or receiving money from the line of credit, even though his concessions at trial and the documentary evidence clearly prove that he did receive money from this line of credit. All Mr. Oggs testified to was that he did not remember this debt and did not remember getting money from the line of credit. The fact that he does not remember the debt or remember getting any money from the line of credit is not inconsistent with the plaintiff's proof that Mr. Oggs did sign the line of credit agreement and that Mr. Oggs did receive the money sued for.

Respectfully, I believe this is a situation where the *pro se* litigant was unfairly advantaged, solely because he was a *pro se* litigant, both at trial and now before this Court. Both the Trial Court and now the majority in their attempts to insure that Mr. Oggs as a *pro se* litigant received "fair and equal treatment" have instead allowed "him an unfair advantage because he represents himself." *Frazier*, 2006 WL 2506706, at *3. I respectfully suggest that the one lesson to be learned by lawyers and future litigants from the majority's opinion is that if you find yourself in a situation similar to Mr. Oggs, do not hire a lawyer but instead proceed *pro se* so that the Rules of Civil Procedure will not be applied to you, and that everything you say in that lawsuit will be construed to mean what it was you might have said as opposed to what you actually did say.

I would reverse the Trial Court and remand this matter for entry of judgment in favor of plaintiff for the amount sued for as plaintiff met its burden.